In Race Tires America v. Hoosier Racing Tire Good morning, my name is Joseph Decker for Appellants, Race Tires America, Inc. et al. I'd like to reserve two minutes of my time for rebuttal, please. Thank you. This is a taxation case, but it's a case of national importance to every citizen, every lawyer who brings a case to this federal court or to any federal court. It's about access to the courts. It's about the American rule. This court has, in fact, led the way in this area. Chief Judge Becker wrote in the year 2000 in Paoli Railroad that costs taxed to the losing party are circumscribed in keeping with the American rule's egalitarian principle of access to the courts. And this court, in Philadelphia Mortgage v. Touche Ross, followed the United States Supreme Court's Crawford Fitting Case and held that the courts may only tax items specifically enumerated in Section 1924. And then- Is it your position that e-discovery can't be taxed as costs? There's an aspect, the copying can be, Your Honor. Didn't you agree to that in this case? No, Your Honor, we did not. The copying of materials can be taxed as costs because that's exactly what Section 1924 says. Your reference, Your Honor, is to the case management order in this case. And the case management order in this case deals with a lot of things other than the copying of materials. There's one section in the case management order that does, in fact, deal with the copying of materials, and that's Section 9. Section 9 specifically says that the parties agree to exchange discoverable and responsive electronically stored information in a particular format. And it was the TIFF format, which is the tagged image file format, that's a copy. Race, Tires, America has always said that's a copy of materials, certainly. So the cost of the copying of the materials that were exchanged by the parties is, in fact, a cost of materials under Section 1920 parens four. Now, there are other things in the case management order, Your Honor, which are also the agreement that the parties reached at the 26F conference that are certainly not copying. For example, related to electronically stored information, there is the agreed upon procedure that if the parties were to use keywords, that is, keywords like a Google search to search through relevant documents, then if you'd used an agreed upon keyword, then your search would be deemed to be a reasonable search, and that was cooperatively agreed to among the parties. Nobody would say that the searching through information with keywords or with the human eyes or eyeballs on the page is copying of materials. It's simply not. And I don't think that that's even the case here, that's really even contested here. If it were paper and you were searching and you had a team of lawyers or paralegals searching through it to find relevant or irrelevant documents to see which were responsive, which were not responsive, and to see which were privileged and which were not privileged. That is not the copying of materials. So, your honor, and of course there are other things that are in the case management order too, like the pleadings are to be closed on May 30th of 2009 or whatever it was. Not everything in the case management order certainly is copying. Now the taxation statute was amended in 2008 to change from making copies of paper to making copies of materials. And the district court, as I recollect, relied upon that change in finding that the e-discovery costs here are indeed taxable. Why was the district court incorrect in recognizing the significance of that legislative change? Because the legislative change didn't change the language of copying, Judge Valesky. It still requires the making of copies. And that was clearly held in a very good opinion in the Eastern District of Virginia. Virtually every case that has decided this issue has decided it after the 2008 amendment. The 2008 amendment changed the words copies of papers to copies of materials. And if you look at the 2003 judicial conference report, which is the legislative history before this court and is in the record, your honor. The legislative history says that it was called, the amendment was called courtroom technology costs. The context of that amendment was because federal courts in the 11th circuit and other places had denied taxation for electronically produced demonstrative evidence. And that was in 2000 and 2001. In 2003, the judicial conference took up that charge and decided we should amend the statute. And it said, this is going to be a narrow amendment. That amendment, your honor, it's perfectly clear, had nothing at all to do with electronic discovery. That amendment was implemented five years later, your honor. And so it's a total red herring in this case. Copying is still copying. And the cost of copies of materials is what's at stake here. And I want- You agreed to production in TIFF format. Absolutely. And in order to get there, you've got to go through all these steps. In order to get there, you have to, in paper discovery, you have to go through all the steps too, your honor. It's the same thing with paper. In order to produce a copy, a paper copy of a relevant document at the end of, at the production stage, you have to send people to the client's offices. You have to gather a lot of things. You have to gather lots of files. Then you have to actually go through them, sort through them, see which ones are relevant or irrelevant, and then which ones are responsive or not responsive. And then you have to decide to produce those documents. And it's not the entire process that is taxed. Of course, it's the copies of materials that are taxed. And the fallacy in the Appellee's argument is that they treat the entire discovery process as just one big copying job. I mean, I guess you could say that at the end of the road, you produce a document to the other side, but that's not what the taxation- The Federal Circuit recently held in Ricoh- Yes. That in the Ricoh, R-I-C-O-H case, that the creation of a database for discovery purposes would be taxed. Not quite, Your Honor, but that's, this is a very important case. Three weeks ago, the Federal Circuit held in the Ricoh case, two things that are relevant to this appeal. One is that the production of documents electronically through using an online hosted database is, in fact, the production of documents. That's absolutely, certainly consistent with our opinion and with our view. If you, it doesn't have to be just a copy of a document. If you take a document and scan it at Kinko's and turn it into a digitized form, sure, that's a copy. We've always said that's a copy. If you do the same thing, but you take the production of documents and instead you produce them online and load them up into a hosted database so that attorneys all over the country can look at them, that's an electronic production. There's no question, but it's the production that's not, that's missing here because what the appellees are requiring to be, are requesting to be taxed, is everything. That is, the gathering of the documents themselves, the imaging of the computers, which is like imaging not all, or making a copy of not only the paper inside a filing cabinet. That's like actually making a copy of the drawers, and it's like making a copy of the metal filing cabinet itself. It copies everything. That's the gathering phase. They're taxing hundreds of thousands of dollars, actually more like $75,000 for the actual searching through the documents by using keywords, which would be done in the paper world by roomfuls of attorneys. Okay? Eyeballs on the page, that's how, that wouldn't be taxed under the taxation statute under 1920 parens four. So. Appellee sites cases, numerous cases, in which the courts have granted hundreds of thousands of dollars in costs for electronic discovery. Yes, your honor. What's wrong with those cases? They follow this case, your honor. They, they rely on the district, the, the ones that don't analyze the statute, and most of them don't, frankly, follow the district court's case here. They cite Race Tires America. The, the, the linchpin case, your honor, that was cited by the district court for this entire en masse discovery philosophy, this entire theory, that this is all just 21st century copying, was the northern district of Georgia in the CBT case, and as we know, the federal circuit three months ago vacated the CBT case, and that CBT case was a case that's relevant on a number of points, but that was the, that was the genesis, your honor, of a lot of these courts. Every single court that has actually taken the time to analyze the statute, and quote it, and quote the Supreme Court's Crawford Fitting case, had, has come to the conclusion that not all these activities are copying, and we've cited them in our brief, the Clayman case out of Florida. How about the Court of Appeals? Are there, is there any Court of Appeals decision that goes the way you would like us to go? No, there's not, your honor. This will, this will be, if, if it goes my way, this will be the first. Because there is, because there is this, this issue just, it doesn't come up a lot. The, I, but I will say that the RICO case is important, and I want to focus for a minute, if I might, on the second statutory criteria. This is an independent grounds for reversal, and that is that the copies must be necessarily obtained for use in the case. The word copy- Your honor, we, what we agreed to is that copying in TIFF format, in the case. Excuse me. Tech. I'm, I'm old. TIFF. Yes. I, I don't know what that is. And let me just. My daughter once asked me, when she was little, whether, I, when I lived, transportation was by horse and buggy. So, tell me, what is TIFF format? It stands for tagged image file format. It's, it, it's, it's in, it's in essence, your honor, to simplify it, it's making an electronic picture or copy of a document. And Race Tires America, to make it very, very, very plain, has never contested, and, and doesn't contest right now. That TIFFing, that's the copying of a document in TIFF format. Yes. Diversion from one format to the agreed upon production format. That's right. And, and I will point out that in the record that there is, there is one invoice that, that talks about that conversion. It's a $7,000 invoice, your honor. Okay? And, in fact, the, the site, the, the site in the record is A1, it's A135. A135 is a 7,000 invoice for TIFFing, your honor. And it says that the TIFFing is gonna be charged at $1,250 a gigabyte. And OCR is gonna be charged at three cents a page. And if you, and if you do native delivery, which, your honor, the Excel spreadsheets were agreed upon to be, to, to be produced in native format, it has a line item, and the line item is $600. It's for four hours of time, at $150 an hour, that's $600. You agree with that? Yes, with this, with this caveat, your honor. Because the Western District of Pennsylvania is one of the most strict districts in the country as to taxation of copying costs. And the Western District of Pennsylvania says that we don't tax costs unless the document is introduced into evidence. And that's part of the handbook. That's the Crouse case decided in 1996. And interestingly enough, that very rule was followed by the clerk in this court, okay, when he refused to tax the deposition transcripts in the case that were not admitted on summary judgment. And it's the same language, that's in subsection two, your honor. It's the same language in subsection two. Transcripts necessarily obtained for use in the case, that's why this is important. And as subsection four, copies necessarily obtained for use in the case. Necessarily obtained doesn't mean it was necessary because of the discovery process. That's Appellee's argument, that everything in the discovery process is necessary. And I haven't even gotten to the reasonableness point, but you can't compare reasonableness by comparing a lump sum here to the lump sum awarded in the Northern District of Georgia in the CBT case. Totally different case, not in this jurisdiction, violates everything like the Lodestar principle. It's totally, totally reversible error on that score alone. Your red light is on. Thank you very much, your honors. Thank you. You come first, Ms. Pollack-Milken. Yes, I do. Thank you, your honors. This was an, go ahead, tell us who you are. Okay. Your honors, may it please the court, I am Deborah Pollack-Milgate here on behalf of Appellee Hoosier Racing Tire Corporation. Could you just tell us a tiny little bit about the underlying case? This was an antitrust case? Yes, your honors. This was an antitrust case in which damages were claimed by STA in the amount of approximately $80 million. And the district court judge, McVeary, found on summary judgment that Hoosier had committed no antitrust violation as a matter of law. That decision was then affirmed by this court. And then subsequently, what occurred was the case then went back for a determination of a bill of costs. And so, two years- A pretty big bill, of course. Well, your honors- I used to be in antitrust cases. And we didn't have anything like hundreds of thousands of dollars, of course. Well, our portion of the cost on Hoosier is actually $125,000. And the clerk of the courts- That's a lot of money. It is a lot of money. It was a lot of money for our client to incur in complying with the court's discovery order. And about $20,000 of that was actually taken out of the award. So the clerk of the court exercised some discretion in finding that some of recoverable, and then the amount that that initial award was reduced by was then the amount that the district court affirmed de novo. So Section 28 U.S.C. Section 1924 provides for fees for exemplification and the cost of making copies of any materials- You're not claiming there's any exemplification of materials here, are you? There are certainly fees. The courts have traditionally looked at either fees for exemplification or copies, making of copies of materials. And so either under the fees for exemplification or the copies of materials- What does exemplification mean? It means simply to illustrate by example. And of course, there's a long history on exemplification and to what degree exemplification costs are recoverable under the statute, primarily in the context of court animations, which is not an issue here. In your case, what was the exemplification? Yes, and I want to be clear, we're not relying on the fees for exemplification as a freestanding argument. But certainly anything we did from taking a hard drive and then actually extracting the data, processing the data, making the data keyword searchable, that all in the computer that we can't peek into is actually making copies. So for example, with the keyword search, if you have a database full of 22 gigabytes of information, how do you pull out a document that is responsive to a particular discovery request? You pull that out by making a copy of it. It's also an illustration. It's also an example. A copy is internal, right? Exactly. It's internal in the computer. So if I do a Google search of something, that's in fact making copies of something that's available electronically without going to my printer and pulling it off. That is true. You are making some sort of electronic copy in that sense. So that's not a copy in the conventional sense of the term where I take copies of papers and reproduce them and bring them into the courtroom and use them, right? It is a copy in the sense of it is how we do business today. It is how we make copies. So Mr. Decker made a point of talking about as if Hoosier were trying to recover for the entirety of the document production. There is unfortunately still a lawyer, a room full of lawyers who looks at these documents. There was one point about 31 videos being converted to a digital format, but only 10 videos were produced yet you claimed costs for all 31 videos. How is that recoverable as taxable costs even if never produced? Well, because it's electronically stored information, we went out as attorneys and we had to determine and make some good faith determinations as what two could potentially be relevant for this case. That is what the trial court's order dictated that we do. Part of what we did then was not exclude things that could potentially have relevant information, including videotapes. So even though never produced as part of the discovery in the case, you claim that they're taxable? We claim that costs for materials, copies of materials that we made to comply with the court's order as was agreed to by STA are recoverable in this case. And Your Honor, I will say I've been somewhat frustrated because I have been unable to track STA's argument on that point to see more specifically what these videos were. And so the argument in my view, it would be waived as well. How is metadata extraction copying? Metadata extraction is copying in the same way that anything is copying, search terms. So metadata is actually an additional, and I apologize for, I grew up a little bit under the old regime as well. But metadata extraction is the process where you actually have copying of additional materials that have never been for use. So a metadata file will tell you when a document was actually created, when it was last accessed. It will tell you a number of different information. It's also contained within the document and is copied if it's produced. And in fact, if the document isn't ultimately produced, it's also copied as well. How is deduplicating or deduping copying? Deduping is the same thing. You are looking for documents that are in the database, looking for the documents that appear more than once. And some of those are then extracted and pulled over into, you know, for the attorneys then to review further. So your position, I'm sorry, go ahead Judge Stengel. When they're extracted, they're moved from one folder within the hard drive to another, is that right? I believe that's right, Your Honor, without getting inside the computer. So these are not copies that are printed out? They certainly could be printed out, which is an interesting point as well. It seems sort of out of place for STA to be complaining about, you know, a lot of these documents were not, or a lot of the information was not produced. Under STA's view of the world, we could print this all out in raw image form, and then that would be somehow compensable under the statute. Of course, that wouldn't make any sense. And that's one reason why the approach actually doesn't make a whole lot of sense. Of course, if you printed everything out, you'd be entitled to taxation only for what you printed out and produced. Correct. Not for the gigabytes of information that may have been made a forensic copy of, or a digital image of that hard drive, for example. But you didn't produce it, so that wouldn't be taxable. Well, but what I'm saying, Your Honor, is we could take those hard drives, and we could literally try to print everything out on that hard drive and hand it over to the other side. And that's not an approach that would make a lot of sense. No, it wouldn't. It would be unreasonable. It might be unreasonable. Right. Yes. And so, that is exactly why the court's order is put into place so as to come up with a process that the parties agree to, the court orders, is going to make sense. And it makes sense for this process to be put into place at a time where no one knows what the prevailing party is. I mean, that's the sound policy behind specifically the rule that the Federal Circuit has now embraced, that we've seen also from the Sixth Circuit and from the Fifth Circuit and from the Seventh Circuit. And that is namely, if you put parties in this position of being a little bit responsible, a little bit behind this rousing unveil of ignorance where they don't know who's going to have to bear the cost at the end of the day. Then they'll be reasonable in that process. I know this is hindsight, but shouldn't this have been a subject that you discussed at your original Rule 26 conference? Your Rule 16 conference before you got the case management order, you know, are these going to be taxable costs? Your Honor, I think that that's a great question and it's perhaps something that the district courts can address as part of this process. When we met and conferred, we were meeting and conferring under this new regime that had the parties talk about ESI. And quite frankly, at that time, we thought that the order had a great amount of detail and allowed the parties to discuss a number of things that were very, very important in this case. In hindsight, sure, if the district courts wanted to require that, that's a great suggestion. What were you looking for? I mean, what was all the hundreds of thousands of dollars? What were you looking for? What were they looking for? Well, I think you'd have to ask them to find out what they were looking for. The approach we had. But you agreed. You ended up agreeing. Yes, we did, Your Honor. And we were very concerned at the time that discovery not be a distraction from the merits of the case. And so, we agreed to this order to provide the full scope of discovery so that we would. Discovery into what? What kind of documents? What was it that was being sought? They sought information from basically all of our managers out in the field who had any interaction with any racetrack around the country. That's what they sought. And so, we have many, many people who have interactions with racetracks around the country to find some sort of behavior that they thought was not appropriate. Now, attorney in paralegal time spent reviewing documents for purposes of looking at whether privileged material has been at least made available but not copied. That's not compensable as taxable costs. And, Your Honor, I see the red light. If you'd answer my question, please. No. We have, and Judge McVeary found this as well. We have not sought any compensation. How is this time, though, different that the vendor spends, for example, doing word searches to eliminate privileged documents, different than an attorney's time doing it? Well, the attorney's time is still necessary in terms of determining what the scope of the privileged search is going to be and then reviewing those documents once those come into play, but I, as an attorney, am not at all qualified to do what the technical experts do. That would be a boon, perhaps, to the client or a loss, but I am not, I'm simply not qualified to do that. Thank you. Thank you, Your Honors. We'll hear from Mr. Jobes. Good morning. May it please the Court, I'm Theodore Jobes of Fox Rothschild, LLP. I represent Appelli and defendant below Dirt Motorsports. With me at the council table is my partner, John Gattaschi, and my associate, Christine Soros. I wanted to first off discuss a couple of points made by Mr. Decker during his- Well, you only have five minutes, so you- You understood within the context of the five minutes. Mr. Decker opened by saying that this is an access to the court's case, and it's not. It's not at all for a couple of reasons. Number one, there are equitable remedies for the taxation of costs, so if this was an appropriate case where a litigant couldn't afford to get to the courthouse, there's a case law in this circuit that gives them equitable remedies if they can't afford to pay. But Judge Sloviter made the point that, you know, taxation of costs, and I was a trial attorney, and I taxed costs and had taxed costs against me. I never saw a bill for $367,000. Well, again, that's a bill that our clients had to pay, and they were not happy with it. Let me explain- But the American rule is that, unfortunately, I mean, if you claim that the discovery was burdensome, you had the opportunity to ask the judge to shift the cost during the discovery process itself under Rule 26, if you thought the discovery was vexatious, there's a statute that covers vexatious litigation tactics, which you could pursue to recover these costs, but how are these taxable as making copies of materials? Well, agreed, Your Honor, that there's an opportunity to seek relief earlier in the proceeding under Rule 26. We, Dirt Motorsports, took advantage of that rule, and we filed a motion for protective order before the trial judge in this case. We sought relief from the tremendous cost of the e-discovery, and one of the primary reasons that we argued in our motion for relief from the e-discovery costs was inability to pay, and we put in record evidence of our client's financial position, et cetera, and at the end of the day, the judge denied our motion. He gave us a little bit more time, but he made us comply with all of the onerous e-discovery. What does your client do? What is Dirt Motorsports? They are a sanctioning body. The best analogy I can make is they're equivalent to NASCAR, but for dirt car racing. I don't know anything about that either, but go ahead. They set the rules for racing, so they're the body that develops the rules. Car racing, this is dirt car racing, which is very popular in certain areas of the country. I gather. Probably less so around here. So our client sets the rules for dirt track racing, but the main point I want to make is that Judge McVeary's decision at the trial level is viewed as under the abuse of discretion standard, and in order for the court to decide- Well, the first issue is whether or not they're taxable as a matter of law. Does the statute allow for the taxation? That's the NOVO review, is it not? Yeah, the statute certainly does, and as- The statute talks about making costs for making copies of materials. Well, and the four circuit courts who have decided the issue have all agreed that the statute does permit e-discovery costs to be compensable as costs under Section 1920, sub 4. So you have the Sixth Circuit and BDT products, Seventh Circuit- In the Rundis case, the court said that costs incurred for discovery are not taxable. I think in the Rundis case, the court held that the e-discovery costs were compensable- They allowed some costs to be compensable, but not all discovery costs. But not on the facts. In other words, the e-discovery costs were a category of costs which could be awarded under Section 1920, sub 4, but on the facts of that case, they held some of the costs sought were not compensable. Right. And that piece of the decision is what I want to talk about, and that's that it is an abuse of discretion standard. In order for this court to decide whether or not the trial court made an abuse of discretion, the court really has to understand the context of the case. What did the trial judge know? What did the trial judge hear? What did the trial judge understand? This was a case where the trial judge was intimately involved in the case from start to finish. He was involved in managing the discovery. He heard 11 discovery motions. It was a case where damages were in excess of $90 million. It was a bet the company case for the litigants. The parties were constantly before the trial judge on these e-discovery issues. The judge was involved in setting this case management order. So at the end of the day, this judge was in a very good position to evaluate whether or not the costs were necessarily incurred for the case, which is really the standard. He made a very careful and well-reasoned opinion on that point. And it shouldn't be disturbed lightly, given the magnitude of the case. I think there was a question earlier about why were the dollar amounts so large? Well, the dollar amounts were so large because the plaintiffs in the case, in the underlying case, imposed over 400 search terms. Our client had to produce 490 gigabytes of data. It was a tremendous undertaking. Well, we know what the bills were, but how do we know that the charges were reasonable? I mean, you know, you can get a photocopying bill at 50 cents a page or a dollar a page, and you say that's unreasonable. A couple reasons. Number one, Judge McVery found them to be reasonable. He reviewed them and found them to be reasonable. That's a- On what basis? So what was the evidentiary basis for him to find they're reasonable? He was involved in the magnitude of what was produced, which is really the issue. Number one. Number two, he looked at what courts had awarded in other cases and whether they're completely similar or not. He looked at a range of cases. And based on that, it was found to be reasonable. And that can't be disturbed unless he abused his discretion. Thank you. Thank you. Thank you. Mr. Decker? Linda. How many minutes does he have? How much of the cost were electronic evidence experts' assessment of their electronic discovery procedures? Assessment? In other words- How much of this was expert and how much was actually copying of materials? $20,000 was copying of materials, Your Honor. The rest of it was expert analysis? The rest of it was searching for, gathering, putting them into piles, searching through them, processing them, which means de-duping, which means taking the duplicates out, and taking the things that were collected like the entire file system of the computer and every software program on it, which we're not interested in copying, taking those out. That's called de-nisting. That's processing. It's taking them into piles. $20,000 was the scanning costs. And there's $6,000 of OCRing costs, which the Eastern District of Virginia clearly says those are to create searchable documents. They're not the copying of documents. I want to- In your brief, you say that this wasn't reasonable. Now, if we were, and I'm not sure we will, but if we were to say that we're not going to defer to the district court, the trial court, who knew a lot about this, would we need to send this back for master to go through it? Well, we did ask for e-discovery master because we thought that the e-discovery master would be knowledgeable about these things, but that request was denied by the district court. Did the other side disagree with you on that? Yes, they did. They did not want a master appointed. I want to go to an important point about what was actually produced, because that's the important point of the RICO case that was decided three weeks ago by the Federal Circuit. The RICO case said that you only can charge for the copies that were necessarily obtained for use in the case. And in the broadest sense, those are the copies that were produced. In the Western District, it's even narrower. Why shouldn't we defer to what the district court said was necessary? He knew the case inside and out. Because the district court, unfortunately, mixed his words with the necessary part. He didn't say that the copies were necessarily obtained. The judge said that the activities, he said that the experts were necessary to go through and collect the documents. Thank you, Mr. Decker, your red light's on. Thank you, Your Honor. Thank you.